1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7   RICHARD FINCH,

8                        Plaintiff,                NO:  11-CV-0326-TOR

9        v.                                        ORDER GRANTING DEFENDANTS'
                                                   MOTION FOR SUMMARY
10   RANDY B. PUGH and JANE DOE                    JUDGMENT
     PUGH, husband and wife, doing
11   business as Correll's Service Center,

12                        Defendants.

13

14        BEFORE THE COURT is Defendants' Motion for Summary Judgment

15   (ECF No. 24).  This matter was heard with oral argument on November 16, 2012.

16   Richard C. Feltman and J.P. Diener appeared on behalf of the Plaintiff.  Patrick F.

17   Delfino appeared on behalf of Defendants.  The Court has reviewed the motion, the

18   response, the reply, and the record and files herein, and is fully informed.

19   //

20   //

ORDER GRANTING SUMMARY JUDGMENT ~ 1

BACKGROUND

This is a personal injury lawsuit.  Plaintiff was injured when he fell into a hole on his employer's property.  At the time of the accident, the hole was covered by a loose board which slid out from under Plaintiff's foot.  Plaintiff has sued Defendants in negligence, alleging that Defendants removed the board during a commercial scale inspection and failed to properly re-secure it when they were finished.  Defendants maintain that they never touched the board during the inspection and that, in any event, they did not owe Plaintiff a duty to re-secure it before leaving the premises.  For the reasons discussed below, the Court will grant Defendants' motion for summary judgment.

FACTS

Plaintiff Richard Finch ("Plaintiff") was injured on October 29, 2008, when he fell into a hole on the premises of his employer, Sherman Rock & Concrete ("Sherman Rock").  The hole in question is located immediately adjacent to a drive-on truck scale used to measure the loads of Sherman Rock's outgoing concrete trucks.  The hole is not a naturally-occurring hole, but rather a gap in a concrete retaining wall that Sherman Rock constructed around the perimeter of the scale.  The purpose of this gap is to allow access to the scale's electronic weight

ORDER GRANTING SUMMARY JUDGMENT ~ 2

sensor, or "load cell," which is located below grade at the base of the scale.[1]  With the scale and packed earth flush with the top of the retaining wall on either side, the gap creates a narrow rectangular hole in the ground.  When the scale was first installed, Sherman Rock covered the hole with a 2" × 8" board which it secured to the top of the retaining wall with metal screws.

The facts surrounding the accident itself are not in dispute.  The parties agree that Plaintiff stepped on the board, that the board slid out from under Plaintiff's foot, and that Plaintiff's leg dropped abruptly into the hole.  The parties also agree that, at the time of the accident, the board was not properly secured in place with metal screws or any other type of fastener.  Further, the parties appear to agree that the only plausible explanation for the accident is that someone removed the board, replaced it back over the hole, and failed to properly re-secure it.  The

---

[1] The scale at issue was designed as a freestanding unit capable of being transported to road construction sites.  Sherman Rock converted it into a permanent unit by installing it at grade and encasing the perimeter of the unit in concrete.  This required that Sherman Rock leave a gap in the concrete in order allow access to the load cell, which normally would have been above grade and readily accessible.  Pugh Decl., ECF No. 27, at ¶ 6.

ORDER GRANTING SUMMARY JUDGMENT ~ 3

only disputed fact for purposes of this motion—and for all practical purposes, the entire case—is who is responsible for failing to properly re-secure the board.

Plaintiff believes that Defendant Correll's Service Center ("Correll's") is responsible for failing to re-secure the board.  Plaintiff asserts that Correll's removed the board while testing the scale on September 24, 2008, and that its technician, Dennis Hubbard ("Hubbard") simply laid the board over the hole after completing his work.  In support of this assertion, Plaintiff offers the testimony of Sherman Rock employee Marcia Reynolds, ("Reynolds"), who observed that the board had been removed during the inspection and subsequently replaced. Reynolds Dep., ECF No. 32-1, at 43, 45, 51.  Reynolds did not personally witness the board being removed or replaced, but infers that Correll's must have been responsible.  Reynolds Dep., ECF No. 32-1, at 45.

Correll's maintains that Hubbard never removed the board during the September 24 inspection.  Hubbard Decl., ECF No. 28, at ¶ 6.  According to Correll's, Hubbard's activities on that date were limited to verifying that the scale was producing accurate measurements (which it was) and preparing an invoice for his services.  Hubbard Decl., ECF No. 28 at ¶¶ 3-4; Pugh Decl., ECF No. 27, at Exhibit 1.  Because the scale was working properly, Correll's asserts, Hubbard did

ORDER GRANTING SUMMARY JUDGMENT ~ 4

1   not inspect the load cell or perform a re-calibration.[2]  Hubbard Decl., ECF No. 28,

2   at ¶¶ 4-5.  In short, Correll's maintains that Hubbard had no reason to access the

3   load cell during the inspection and therefore did not remove the board.[3]  Hubbard

4   Decl., ECF No. 28, at ¶ 5; Pugh Decl., ECF No. 27, at ¶¶ 8-9, 12 & Exhibit 1.

5        Correll's has also produced evidence that Sherman Rock—rather than

6   Correll's—re-secured the board on prior occasions when it had been removed by

7   one of Correll's technicians.  Specifically, former Sherman Rock employee Larry

8   Larsen ("Larsen") testified that (1) he personally secured the board to the retaining

9   
10  [2] Correll's explains that, had a re-calibration been required, Hubbard would have

11  accessed mechanical components through a manhole cover located in the *middle* of

12  the scale rather than through the load cell access point on the side of the scale.

13  Pugh Decl., ECF No. 27, at ¶¶ 4-5.

14  [3] According to Defendants, "[t]he load cell is never repaired or calibrated, [as it

15  can] only be replaced.  If the load cell fails, the scale no longer works properly."

16  Pugh Decl., ECF No. 27, at ¶ 8.  Thus, in Defendants' experience, "the load cell

17  would not be inspected or otherwise accessed unless [it] required replacement."

18  Pugh Decl., ECF No. 27, at ¶ 9.  Because "there were no reports that the load cell

19  had failed," Hubbard explains, he did not access it.  Hubbard Decl., ECF No. 28, at

20  ¶ 5.

1   wall using metal screws when he first joined the company; (2) that the board had

2   subsequently been removed and replaced on three or four prior occasions when

3   Correll's needed to replace the scale's load cell; and (3) he personally re-secured

4   the board to the retaining wall on each of these occasions.  Larsen Dep., ECF No.

5   29-1 at 21-23.  Because Larsen left Sherman Rock in June 2008, however, he has

6   no personal knowledge of what occurred during the September 24 scale inspection

7   or thereafter up to the date of the accident.

8                                    DISCUSSION

9          A court may grant summary judgment in favor of a moving party who

10  demonstrates "that there is no genuine dispute as to any material fact and that the

11  movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is

12  "material" within the meaning of Rule 56(a) if it might affect the outcome of the

13  suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-

14  49 (1986).  A "genuine dispute" over any such fact exists only where there is

15  sufficient evidence from which a reasonable jury could find in favor of the non-

16  moving party.  *Id.* at 248.

17         The party moving for summary judgment bears the initial burden of

18  demonstrating the absence of any genuine issue of material fact.  *Celotex*, 477 U.S.

19  at 323.  Where the non-moving party has the burden of proof at trial, the moving

20  party need only demonstrate an absence of evidence supporting the non-moving

ORDER GRANTING SUMMARY JUDGMENT ~ 6

party's case.  *Id.* at 325.  The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  "This burden is not a light one," *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010), as the non-moving party must come forward with more than a "mere scintilla" of evidence, and may not rely upon "metaphysical doubt as to the material facts at issue."  *Id.* (internal quotations and citations omitted).  In deciding whether this standard has been satisfied, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 327, 378 (2007).

**A. Did Correll's Owe Plaintiff a Duty of Care?**

Correll's first argument on summary judgment is that it did not owe Plaintiff a duty of care.  In support of this argument, Correll's asserts that its contractual obligation to test and occasionally repair the truck scale did not extend to ensuring that Plaintiff's worksite remained free of foreseeable hazards.  According to Correll's, this duty belonged exclusively to Plaintiff's employer, Sherman Rock. In the absence of any evidence that Sherman Rock affirmatively "entrusted [it] with a duty to ensure that the concrete weigh scale was safe for employee use," Correll's argues, it cannot be held liable for Plaintiff's injuries as a matter of law. ECF No. 26 at 10.

1    Plaintiff disagrees with Correll's legal analysis.  In Plaintiff's view, the

2    question is not whether Sherman Rock "entrusted" Correll's with a duty to keep

3    the area safe for employee use, but simply "whether it was reasonably foreseeable

4    that Correll's failure to properly secure the board on the load cell access point

5    could result in someone falling into the hole."  ECF No. 31 at 6.  In support of this

6    argument, Plaintiff notes that Washington recently abolished the so-called

7    "completion and acceptance" doctrine and that, as a result, contractors who

8    perform negligent work at a place of employment may be liable for injuries arising

9    from their own negligence.  ECF No. 31 at 5-6 (citing *Davis v. Baugh Indus.*

10   *Contractors, Inc.*, 159 Wash.2d 413 (2007)).

11   The Court finds that Plaintiff's analysis is correct.  The Washington

12   Supreme Court's decision in *Davis* establishes that a contractor may be liable "for

13   injury or damage to a third person as a result of negligent work . . . when it was

14   reasonably foreseeable that a third person would be injured due to that negligence."

15   159 Wash.2d at 417 (citing Restatement (Second) of Torts §§ 385, 394, 396

16   (1965)).  As Plaintiff correctly notes, this rule extends to contractors who

17   performed negligent work at the injured party's place of employment.  *Id.* at 416

18   (applying rule where employee was injured at his place of employment as a result

19   of contractor's negligence).  This authority is incompatible with Correll's

20   affirmative "entrustment" argument.  At bottom, the law in Washington is that a

ORDER GRANTING SUMMARY JUDGMENT ~ 8

1   contractor owes a duty of care to all third parties—including employees of a

2   business—to perform its work in a manner which prevents reasonably foreseeable

3   injuries.  *Davis*, 159 Wash.2d at 417.  This duty is not supplanted by an employer's

4   duty to maintain a reasonably safe workplace.  Accordingly, Correll's is not

5   entitled to judgment as a matter of law on the duty element of Plaintiff's

6   negligence claim.

7   **B. Did Defendants Breach the Duty?**

8         As noted above, the primary dispute in this case is whether Correll's or

9   Sherman Rock is responsible for failing to properly re-secure the board over the

10  load cell access point.  Correll's maintains that it did not disturb the board during

11  the September 24 scale inspection.  In support of this assertion, Correll's points to

12  the following evidence: (1) Dennis Hubbard's sworn statement that he did not

13  remove the board during the inspection; (2) a test report which indicates that the

14  scale was producing accurate measurements and that no further adjustments or

15  inspections were performed; and (3) Larry Larson's testimony that Sherman Rock

16  always replaced the board when it had been removed on prior occasions.

17  According to Correll's, this evidence demonstrates that there is no triable issue of

18  fact as to whether *it* failed to properly re-secure the board.

19        In opposing summary judgment, Plaintiff relies primarily on the deposition

20  testimony of Marcia Reynolds.  According to Reynolds, the load cell access point

was uncovered during the September 24 inspection and was subsequently re-covered prior to Plaintiff's accident.  Reynolds Dep., ECF No. 32-1, at 50-51.  Reynolds did not personally witness the board being removed or replaced, but assumes that Hubbard removed it during the inspection and then replaced it when he was finished.  Reynolds Dep., ECF No. 32-1, at 45, 51.

Plaintiff also relies upon Hubbard's deposition testimony.  First, Plaintiff notes that Hubbard could not recall whether the load cell access point was covered or uncovered during the September 24 inspection.  *See* Hubbard Dep., ECF No. 32-3 at 15.  In Plaintiff's view, this testimony undermines Hubbard's statement that he did not remove the board during the inspection.  Second, Plaintiff notes that Hubbard admitted during his deposition that he *would have* replaced the board without re-securing had he removed it himself encountered the load cell access point uncovered.  *See* Hubbard Dep., ECF No. 32-3, at 18.  According to Plaintiff, this testimony makes it more likely that Hubbard did, in fact, replace the board without re-securing it.

When viewed in the light most favorable to Plaintiff, the evidence above is insufficient to create a genuine issue of material fact.  First, Plaintiff has not disputed that the scale was registering accurate measurements when Correll's tested it on September 24.  Hubbard Decl., ECF No. 28, at ¶¶4-5; Pugh Decl., ECF No. 27, at Exhibit 1.  Nor has Plaintiff disputed that Correll's did not inspect the

ORDER GRANTING SUMMARY JUDGMENT ~ 10

1    load cell since the scale was working properly.  Hubbard Decl., ECF No. 28, at ¶¶

2    4-5; Pugh Decl., ECF No. 27, at ¶¶ 8-9 and Exhibit 1.  This undisputed evidence

3    weighs strongly in Correll's favor, as it tends to support Hubbard's unqualified

4    assertion that he did not remove the board during the inspection.

5            Second, Hubbard's sworn declaration and deposition testimony are not as

6    inconsistent as Plaintiff suggests.  While it is true that Hubbard could not recall

7    whether the access point was covered during the September 24 inspection

8    (Hubbard Dep., ECF No. 32-3, at 15), this testimony does not significantly

9    undermine his statement that he did not remove the board.  Hubbard Decl., ECF

10   No. 28, at ¶ 5.  Indeed, the fact that Hubbard could not recall seeing the board on

11   September 24 actually tends to *support* his assertion that he did not remove it.  Had

12   he removed the board—a process that would have required him to remove the

13   metal screws securing the board to the concrete retaining wall—he likely would

14   have remembered doing so.[4]  Given that Hubbard had no apparent reason to access

15   the load cell, however, it is not surprising that he cannot recall whether the access

16   point was covered or uncovered during the inspection.

17

18

19   _____

     [4] In fact, Hubbard testified that he could not recall *ever* having removed the board.

20   Hubbard Dep., ECF No. 32-3, at 18.



ORDER GRANTING SUMMARY JUDGMENT ~ 11

Third, Marcia Reynolds's testimony is not specific enough to create a genuine issue of material fact as to whether Correll's negligently replaced the board.  At best, Reynolds's testimony establishes only that (1) someone removed the board either prior to or during the inspection on September 24; and (2) someone replaced the board prior to Plaintiff's accident on October 29.  Notably, this testimony sheds virtually no light on *who* removed the board or *who* replaced it.  Reynolds did not personally witness the board being removed or replaced; rather, she simply assumed that Correll's removed the board during the inspection and replaced it when they were finished.  Reynolds Dep., ECF No. 32-1, at 45, 51.  Indeed, Reynolds forcefully asserted during her deposition that she did not know who, specifically, had replaced the board:

Q:    Just taking your assumption that [Correll's] moved it, apparently they're the ones that put it back over the hole?

A:    And that's an assumption as well.

Q:    It is, but it's based on the fact that you testified it was off the hole when they were there.

A:    Right.

Q:    So someone put it back over the hole?

A:    Right.

Q:    Just like someone removed it?

A:    Right.  Maybe the board fairies came and took care of that little problem.  I don't know.  I just don't know.

Reynolds Dep., ECF No. 32-1, at 51.

In sum, Plaintiff has not established a genuine issue of material fact as to whether Correll's—rather than Sherman Rock—replaced the board over the load cell access point. Correll's has produced undisputed evidence that the scale was working properly and that the load cell did not need to be accessed. Further, Correll's technician has unequivocally denied removing the board during the inspection. Plaintiff's only concrete evidence is that a Sherman Rock employee observed that the board had been removed during the inspection and subsequently replaced. This employee, however, has absolutely no knowledge of *who* removed the board or *who* replaced it. At best, this evidence gives rise to a mere inference that Correll's *could have* been responsible. This "mere scintilla" of evidence, however, is insufficient to create a genuine issue of material fact on summary judgment. *See Anderson*, 477 U.S. at 249 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). Because no reasonable jury could return a verdict in Plaintiff's favor on the evidence presented, *In re Oracle Corp.*, 627 F.3d at 387, the Court will grant Defendants' motion for summary judgment.

ORDER GRANTING SUMMARY JUDGMENT ~ 13

**C. Proximate Cause**

Having concluded that Plaintiff cannot prove that Correll's breached its duty of care, the Court need not address whether the alleged breach was the proximate cause of Plaintiff's injuries.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendants' Motion for Summary Judgment (ECF No. 24) is **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Defendants, provide copies to counsel, and **CLOSE** the file.

**DATED** this 16th day of November, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER GRANTING SUMMARY JUDGMENT ~ 14